UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

JAMIE SULLIVAN,

      Plaintiff,                            CASE NO.:

vs.

GERIATRX HEALTH, LLC, a Florida
Limited Liability Company; GERIATRX
CARE, INC., a Florida For Profit
Corporation; and WALTER GIL, M.D., in
his individual capacity

      Defendants.
_____/

## **COMPLAINT**

COMES NOW the Plaintiff, JAMIE SULLIVAN (hereinafter "SULLIVAN"), by and through the undersigned Counsel, and sues the Defendants, GERIATRX HEALTH, LLC, a Florida Limited Liability Company; GERIATRX CARE, INC., a Florida For Profit Corporation; and WALTER GIL, M.D., in his individual capacity, (hereinafter collectively referred to as "DEFENDANTS") and alleges the following:

## **INTRODUCTION**

1.     SULLIVAN brings this action against DEFENDANTS for failure to pay minimum wage in violation of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 et seq., pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), Breach of Contract for failure to pay SULLIVAN her hospital rounds and patient visits at skilled nursing facilities, Tortious Interference with a Business Relationship, and Quantum Meruit.

1

## JURISDICTION AND VENUE

2.      This Court is vested with federal question jurisdiction over SULLIVAN's claim arising under the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 et seq., pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3.      The Court is granted with supplemental jurisdiction over SULLIVAN's related state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue lies within the Southern District of Florida, Fort Pierce Division, pursuant to 28 U.S.C. § 1391(b), because all actions giving rise to this claim arose in this Judicial Circuit.

5.      All statutory and administrative prerequisites have been met, waived, or abandoned prior to the filing of this action.

## PARTIES

6.      At all times material hereto, GERIATRX HEALTH, LLC (hereinafter "GERIATRX HEALTH") was duly authorized and licensed to do business in Martin County, Florida, with its principal addresses at 5753 SW Longspur Lane, Palm City, Florida 34990. GERIATRX HEALTH offered and still offers complete medical care to patients *in skilled nursing facilities* in Martin County, Florida.

7.      At all times material hereto, GERIATRX HEALTH was a privately owned corporation which engaged in interstate commerce and had gross receipts in excess of $500,000.00 annually.

8.      At all times material hereto, GERIATRX CARE, INC. (hereinafter "GERIATRX CARE") was duly authorized and licensed to do business in Martin County, Florida, with its principal addresses at 5753 SW Longspur Lane, Palm City, Florida 34990. GERIATRX CARE

offered and still offers complete medical care to patients *in hospitals* in Martin and St. Lucie Counties in Florida.

9.     At all times material hereto, GERIATRX CARE was a privately owned corporation which engaged in interstate commerce and had  gross receipts in excess of $500,000.00 annually.

10.     WALTER GIL, M.D. (hereinafter "DR. GIL") owns and operates both GERIATRX HEALTH and GERIATRX CARE.

11.     At all times material hereto, SULLIVAN was a resident of Tequesta, Florida, and worked as a nurse practitioner for DEFENDANTS.

### SULLIVAN'S EMPLOYMENT AT GERIATRX CARE (Hospital Care)

12.     GERIATRX CARE and DR. GIL controlled the patients SULLIVAN attended to, the places where SULLIVAN attended to those patients, the dates and timeframes of visits, and compensation, during the time SULLIVAN was employed at GERIATRX CARE from August 10, 2020 through December 23, 2020.   Accordingly, GERIATRX CARE was SULLIVAN's "employer" as defined by the FLSA.

13.     GERIATRX CARE and DR. GIL have violated and continue to violate the FLSA by misclassifying its nurse practitioners as "independent contractors". Misclassification of employees as independent contractors "deprives employees of critical workplace protections and employment benefits to which they are legally entitled." *See* Statement of Secretary of Labor Hilda L. Solis on introduction of legislation regarding issue of misclassification, U.S. Department of Labor, Wage and Hour Division (April 22, 2010), available online at www.dol.gov. Misclassification of workers also costs the government billions of dollars in unpaid taxes. *See* Annual Report of the White House Task Force on the Middle Class, Executive Summary at "v" (February 2010), available online at *http://www.whitehouse.gov/strongmiddleclass/reports*.

14.     In the advancement of its business, GERIATRX CARE employed at least two (2) employees within the meaning of the FLSA.

15.     In the advancement of its business GERIATRX CARE had/has employees who regularly handled, utilized, and/or otherwise worked on goods and materials that were moved in and/or produced for commerce by any person. In the advancement of its business, GERIATRX CARE, engaged in and continues to engage in interstate commerce within the meaning of the FLSA.

16.     At all times material hereto, DR. GIL was and continues to serve as owner and operator or Manager of GERIATRX CARE. DR. GIL controlled SULLIVAN's duties, days worked, locations, and compensation.  Accordingly, DR. GIL was an "employer" of SULLIVAN within the meaning of 29 U.S.C. § 203(d).

## SULLIVAN'S EMPLOYMENT AT GERIATRIX HEALTH (Skilled Nursing Facility)

17.     GERIATRX HEALTH and DR. GIL controlled the patients SULLIVAN attended to, the places where SULLIVAN attended to those patients, the dates and timeframes of visits, and compensation, during the time SULLIVAN was employed at GERIATRX HEALTH from August 10, 2020 through December 23, 2020.  Accordingly, GERIATRX HEALTH was SULLIVAN's "employer" as defined by the FLSA.

18.     GERIATRX HEALTH and DR. GIL have violated and continue to violate the FLSA by misclassifying its nurse practitioners as "independent contractors". Misclassification of employees as independent contractors "deprives employees of critical workplace protections and employment benefits to which they are legally entitled." See Statement of Secretary of Labor Hilda L. Solis on introduction of legislation regarding issue of misclassification, U.S. Department of Labor, Wage and Hour Division (April 22, 2010), available online at www.dol.gov.

Misclassification of workers also costs the government billions of dollars in unpaid taxes. See Annual Report of the White House Task Force on the Middle Class, Executive Summary at "v" (February 2010), available online at http://www.whitehouse.gov/strongmiddleclass/reports.

19.     In the advancement of its business, GERIATRX HEALTH employed at least two (2) employees within the meaning of the FLSA.

20.     In the advancement of its business GERIATRX HEALTH, had/has employees who regularly handled, utilized, and/or otherwise worked on goods and materials that were moved in and/or produced for commerce by any person. In the advancement of its business, GERIATRX HEALTH, engaged in and continues to engage in interstate commerce within the meaning of the FLSA.

21.     At all times material hereto, WALTER GIL, M.D. was and continues to serve as owner and operator or Manager of both GERIATRX HEALTH LLC. and  GERIATRX CARE, INC. WALTER GIL, M.D. controlled SULLIVAN's duties, days worked, locations, and compensation.  Accordingly,  WALTER GIL, M.D. was an  "employer" of SULLIVAN within the meaning of 29 U.S.C. § 203(d).

## **GENERAL ALLEGATIONS**

22.     SULLIVAN  initially met and interviewed with DR. GIL on or about August 1, 2020. At that time, DR. GIL set forth his requirements as a nurse practitioner acting on his behalf at the hospitals and skilled nursing facilities where he sees patients.

23.     DR. GIL set forth her responsibilities, as well as offering her the chance to be paid between $100,000.00 and $110,000.00 for seeing his patients and doing rounds at the hospitals and skilled nursing facilities where he sees patients. DR. GIL advised that she would be paid separately through two companies he owns and operates, GERIATRX HEALTH and GERIATRX

CARE. Through GERIATRX CARE, SULLIVAN was to be paid for performing rounds and seeing patients at hospitals on behalf of DR. GIL. Through GERIATRX HEALTH, SULLIVAN was to be paid for seeing patients at skilled nursing facilities on behalf of DR. GIL.

24.     As an initial condition of employment, Dr. Gil advised SULLIVAN that despite working on the days he needed and seeing his patients at the hospitals and skilled nursing facilities, she would not be paid for the month of August because "she was not producing any income for him". Dr. Gil advised SULLIVAN that in as much as she would be traveling to and from various hospitals and skilled nursing facilities where he had patients, he would "pay for her gas".

25.     Dr. Gil indicated that beginning September 1, 2020 for two weeks she would be paid $1,500.00 and then $2,000.00 for the next two weeks for doing rounds and seeing patients at the hospital. Additionally, Dr. Gil advised that starting October 1, 2020, she would be paid at a higher rate.

26.     Dr. Gil indicated that he regularly takes off one week per month and that when he was off, she would be off.

27.     Beginning on or about August 10, 2020, SULLIVAN began doing rounds and seeing patients with Dr. Gil. During the course of the day, Dr. Gil continuously quizzed SULLIVAN on her knowledge of various medical conditions and constantly made it known that she was required to always do homework, to the point where he made it clear that he controlled her weekends and the hours she was not physically attending to patients.

28.     SULLIVAN was not paid for the hours she spent each day at the hospital from August 1, 2020 through August 31, 2020 nor did she receive any gas money for traveling to and from the hospitals and skilled nursing facilities from August 10, 2020 through August 31, 2020.

29.     Dr. Gil continuously belittled and demeaned SULLIVAN in front of staff members of the hospitals and skilled nursing facilities where she was seeing his patients and would make the statement that if she didn't like it, she could walk away from the job at any time.

30.     According to the payment schedule set forth by Dr. Gil, SULLIVAN was to be paid $1,500.00 for the first two weeks she worked at the hospital in September. SULLIVAN worked during that time but was not compensated by Dr. Gil for doing rounds and seeing patients at the hospital for the first two weeks of September.

31.     According to the payment schedule set forth by Dr. Gil, SULLIVAN was to be paid $2,000.00 for the second two weeks she worked at the hospital in September. SULLIVAN worked during that time but was not compensated by Dr. Gil for doing rounds and seeing patients at the hospital for the second two weeks of September.

32.     Based upon the payment schedule set forth by Dr. Gil, SULLIVAN was entitled to be paid $1,000.00 for the last week of September which included the first two days of October. SULLIVAN worked at the hospital during that time but was not compensated by Dr. Gil for doing rounds and seeing patients at the hospital for the last week of September.

33.     According to the payment schedule set forth by Dr. Gil, SULLIVAN was to be paid an amount higher than $2,000.00 for the first two weeks she worked in October at the hospital. SULLIVAN worked at the hospital during that time but was not compensated by Dr. Gil for doing rounds and seeing patients at the hospital for the first two weeks of October.

34.     In accordance with the original agreement between Dr. Gil and SULLIVAN, on October 11, 2020 Dr. Gil provided SULLIVAN with a check from GERIATRX HEALTH, LLC. in the amount of $2070.00 which Dr. Gil said was for SULLIVAN seeing sixty-nine (69) patients

during the month of September at a rate of thirty dollars ($30.00) per patient seen at the skilled nursing facilities.

35.     According to the payment schedule set forth by Dr. Gil, SULLIVAN was to be paid an amount higher than $2,000.00 for the second two weeks she worked at the hospital in October. SULLIVAN worked  at the hospital during that time but was not compensated by Dr. Gil for doing rounds and seeing patients at the hospital for the second two weeks of October.

36.     According to the payment schedule set forth by Dr. Gil, SULLIVAN was to be paid an amount higher than $2,000.00 for the first two weeks she worked at the hospital in November. SULLIVAN worked at the hospital during that time but was not compensated by Dr. Gil for the first two weeks of November.

37.     In accordance with the original agreement between Dr. Gil and SULLIVAN, on November 8, 2020 Dr. Gil provided SULLIVAN with a check from GERIATRX HEALTH, LLC. in the amount of $2,555.00 which Dr. Gil said was for SULLIVAN seeing seventy-three (73) patients at the skilled nursing facilities during the month of October at a rate of thirty-five dollars ($35.00) per patient seen.

38.     According to the payment schedule set forth by Dr. Gil, SULLIVAN was to be paid an amount higher than $2,000.00 for the second two weeks she worked at the hospital in November. SULLIVAN worked at the hospital during that time but was not compensated by Dr. Gil for work she performed during the second two weeks of November.

39.     Following SULLIVAN obtaining her credentialing at the hospital on November 11, 2020, she contacted Dr. Gil to discuss her salary. Dr. Gil responded with an offer of two options. The first option was a yearly salary of eighty-four thousand dollars ($84,000.00) which included her working 40 hours per week at the hospital and seeing 10 patients per day at a skilled nursing

facility. The second option was for a salary to work full time at the hospital (salary was indicated to be at a rate of sixty thousand dollars ($60,000.00) beginning in January of 2021, but would be only at the rate of fifty thousand dollars ($50,000) for the month of December 2020) and be paid for seeing patients at the hospital at a rate of thirty dollars ($30.00) per patient plus a payment of thirty dollars ($30.00) per patient seen at the skilled nursing facilities.

40.     SULLIVAN opted for the second option after Dr. Gil provided the terms by text message to her. In doing so, SULLIVAN requested thirty-two dollars ($32.00) per patient seen at the skilled nursing facilities to which Dr. Gil responded that he would get back to her. Dr. Gil never responded to this request.

41.     Based upon the agreement entered into between Dr. Gil and SULLIVAN in November which established her yearly salary to be on the basis of $50,000.00 until December 31, 2020 and then escalate to $60,000.00 as of January 1, 2021, SULLIVAN was entitled to be paid $4,166.66 for the month of December 2020.

42.     In accordance with the original agreement between Dr. Gil and SULLIVAN, on December 11, 2020, Dr. Gil provided SULLIVAN with a check from GERIATRX HEALTH, LLC. in the amount of $4,590.00 which Dr. Gil said was for SULLIVAN seeing one hundred fifty-three (153) patients at both the hospital (66 patients) and skilled nursing facilities (87 patients) during the month of November at a rate of thirty-five dollars ($30.00) per patient seen.

43.     For the days SULLIVAN worked between November 30 and December 23, 2020, SULLIVAN should have been paid $3,091.40.  SULLIVAN was not compensated for all of the days she worked at the hospital in December 2020.

44.     SULLIVAN continued to work for Dr. Gil until she resigned on December 23, 2020, after  Dr. Gil, without any discussion with SULLIVAN, told SULLIVAN she would have

to be on call and see patients at the skilled nursing facilities during the week they were off from the hospital and Dr. Gil would be in Costa Rica.

45.     According to the salary structure that had been agreed upon in November between Dr. Gil and SULLIVAN, SULLIVAN was entitled to one thousand three hundred and eighty dollars ($1,380.00) from GERIATRX HEALTH, LLC. which represented payment for 46 patients seen at the skilled nursing facilities at a rate of $30.00 per patient seen. SULLIVAN was not compensated by Dr. Gil for seeing the patients at the skilled nursing facilities or the hospital during the period of November 30, 2020 through December 23, 2020.

46.     Based upon the foregoing, SULLIVAN was entitled to a total of FIFTEEN THOUSAND FIVE HUNDRED AND NINETY-ONE DOLLARS AND 40 CENTS ($15,591.40) from GERIATRX CARE, INC. the agreed upon base salary for doing rounds at the hospitals. Dr. Gil failed to pay SULLIVAN for doing rounds at the hospital.

47.     Based upon the foregoing, while Dr. Gil paid SULLIVAN for the patients she saw at the skilled nursing facilities in the months of September, October, and November, Dr. Gil failed to pay SULLIVAN ONE THOUSAND THREE HUNDRED AND EIGHTY DOLLARS ($1,380.00) which represented payment for 46 patients seen at the skilled nursing facilities at a in December 2020 at a rate of $30.00 per patient seen.

48.     Based upon the foregoing, Dr. Gil only paid SULLIVAN for seeing patients at the hospital on a per patient basis for only the time period of November 12, 2020 through November 29, 2020. She was not paid on a per patient basis at the hospital for the time period November 30, 2020 through December 23, 2020.

49.     Following her resignation from employment with DEFENDANTS, SULLIVAN began to seek out other employment. SULLIVAN was contacted by a representative from

MedLead Careers who scheduled an interview with Med Elite Group, for whom SULLIVAN would technically be working for. Med Elite Group places its employees with medical facilities.

50.     SULLIVAN then had an interview with administrative staff via zoom at Martin Nursing and Restorative Care Center. The facility was well aware of SULLIVAN's abilities, as she had been to that facility to see patients who were under the care of Dr. Gil.

51.     SULLIVAN was offered the position which was forty (40) hours per week, Monday through Friday, at a salary of $130,000.00. The position included payment of her malpractice insurance, four weeks paid vacation, and a $20.00 payment for every patient she saw over the required amount of 25 per day. SULLIVAN accepted this offer.

52.     After consultation with SULLIVAN, the facility contacted Dr. Gil regarding SULLIVAN. Dr. Gil told the facility that SULLIVAN had a non-compete and that she could not work there.

53.     SULLIVAN was contacted by the recruiter she spoke with from MedLead Careers who advised that she would not be getting the job because of the existence of the non-compete which Dr. Gil falsely claimed to exist.

54.     SULLIVAN at no time had a non-compete or any formal employment agreement with Dr. Gil or Defendants.

55.     As a result of Dr. Gil's false claim about a non-existent non-compete contract, SULLIVAN was deprived of employment with Martin Nursing and Restorative Care Center.

## COUNT I – VIOLATION OF FAIR LABOR STANDARDS ACT ("FLSA") AGAINST GERIATRX CARE, LLC and WALTER GIL, M.D. INDIVIDUALLY

56.     SULLIVAN realleges and incorporates the allegations in paragraphs 1 through 48 above as if fully set forth herein.

57.     At all relevant times, GERIATRX CARE, LLC and WALTER GIL, M.D. employed Plaintiff SULLIVAN within the meaning of the FLSA.

58.     During Plaintiff SULLIVAN's employment with GERIATRX CARE, LLC and WALTER GIL, M.D. and at all times relevant to this action, Plaintiff SULLIVAN worked at the hospital and was not compensated for the time periods between August 10, 2020 through November 11, 2020, and November 30, 2020 through December 23, 2020. The total amount of days of unpaid wages at the hospital is seventy-two (72) days. The total hours for each month are set forth in Exhibit A.

59.     "Any employer who violates the provisions of Section 207 [of the Fair Labor Standards Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

60.     GERIATRX CARE, LLC and WALTER GIL, M.D. violated 29 U.S.C. § 206 by failing to compensate SULLIVAN at a rate not less than $8.56 per hour for her hours worked in 2020.

61.     GERIATRX CARE, LLC and WALTER GIL, M.D. are not exempt from the minimum wage provision of the FLSA. Withholding pay for hours worked is a violation of the Fair Labor Standards Act.

62.     GERIATRX CARE, LLC's and WALTER GIL, M.D.'s  actions were intentional, reckless or malicious.

63.     GERIATRX CARE, LLC's and WALTER GIL, M.D.'s  actions were not done in good faith.

64.     As a direct, foreseeable, and proximate cause of GERIATRX CARE, LLC's and WALTER GIL, M.D.'s  actions, SULLIVAN has been damaged.

65.     SULLIVAN brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that she is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

66.     Specifically, as set forth on Exhibit A, SULLIVAN is entitled to be paid for a total of three hundred and twenty-eight  (328) hours that SULLIVAN worked at GERIATRX CARE, LLC. For three hundred and twenty-eight (328) hours at the minimum wage of eight dollars and fifty-six cents ($8.56) per hour, SULLIVAN is entitled to two thousand eight hundred seven dollars and sixty-eight cents ($2,807.68) of unpaid minimum wages. Additionally, SULLIVAN is entitled to an additional equal amount of two thousand eight hundred seven dollars and sixty-eight cents ($2,807.68) in liquidated damages. In total, SULLIVAN is entitled to five thousand six hundred fifteen dollars and thirty-six cents ($5,615.36) for GERIATRX CARE, LLC's and WALTER GIL, M.D.'s  failure to pay SULLIVAN her entitled to minimum wages.

67.     SULLIVAN seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, JAMIE SULLIVAN, demands judgment against GERIATRX CARE, INC., a Florida For Profit Corporation and WALTER GIL, M.D.,  jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper. SULLIVAN brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that she is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

## COUNT II – VIOLATION OF FAIR LABOR STANDARDS ACT ("FLSA") AGAINST GERIATRX HEALTH, LLC and WALTER GIL, M.D. INDIVIDUALLY

68.     SULLIVAN realleges and incorporates the allegations in paragraphs 1 through 48 above as if fully set forth herein.

69.     At all relevant times, GERIATRX HEALTH, LLC and WALTER GIL, M.D. employed Plaintiff SULLIVAN within the meaning of the FLSA.

70.     During Plaintiff SULLIVAN's employment with GERIATRX HEALTH, LLC and WALTER GIL, M.D. and at all times relevant to this action, specifically from November 30, 2020 through December 23, 2020, Plaintiff SULLIVAN worked and was not compensated for the hours she spent seeing patients at skilled nursing facilities.

71.     Plaintiff SULLIVAN worked an average of two (2) hours each day for twenty (20) hours that she spent seeing patients at skilled nursing facilities between November 30, 2020 through December 23, 2020. The total hours, forty (40 ) for the time period of November 30, 2020 through December 23, 2020 are set forth in Exhibit B.

72.     Specifically, as set forth on Exhibit A, SULLIVAN is entitled to be paid for  forty (40) hours that SULLIVAN worked at GERIATRX HEALTH, LLC. For forty (40) hours at the minimum wage of eight dollars and fifty-six cents ($8.56) per hour, SULLIVAN is entitled to three hundred forty-two dollars and forty cents ($342.40) of unpaid minimum wages. Additionally, SULLIVAN is entitled to an additional equal amount of three hundred forty-two dollars and forty cents ($342.40)  in liquidated damages. In total, SULLIVAN is entitled to six hundred eighty-four dollars and eighty cents ($684.80) for GERIATRX HEALTH, LLC's and WALTER GIL, M.D.'s failure to pay SULLIVAN her entitled to minimum wages.

73.     "Any employer who violates the provisions of Section 207 [of the Fair Labor Standards Act] shall be liable to the employee or employees affected in the amount of their unpaid

minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

74.   GERIATRX HEALTH, LLC and WALTER GIL, M.D. violated 29 U.S.C. § 206 by failing to compensate SULLIVAN at a rate not less than $8.56 per hour for her hours worked in 2020.

75.   GERIATRX HEALTH, LLC and WALTER GIL, M.D. are not exempt from the minimum wage provision of the FLSA. Withholding pay for hours worked is a violation of the Fair Labor Standards Act.

76.   GERIATRX HEALTH, LLC's and WALTER GIL, M.D.'s actions were intentional, reckless or malicious.

77.   GERIATRX HEALTH, LLC's and WALTER GIL, M.D.'s actions were not done in good faith.

78.   As a direct, foreseeable, and proximate cause of GERIATRX HEALTH, LLC's and WALTER GIL, M.D.'s actions, SULLIVAN has been damaged.

79.   SULLIVAN brings forth this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., and alleges that she is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

80.   SULLIVAN seeks recovery of damages as referenced above and further seeks interest, costs, and attorney's fees, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, JAMIE SULLIVAN, demands judgment against GERIATRX HEALTH, LLC, a Florida Limited Liability Company; and WALTER GIL, M.D.,  jointly and severally,  plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper. SULLIVAN brings forth this action pursuant to the Fair Labor Standards Act, 29

U.S.C. §§ 201 et seq., and alleges that she is entitled to the following: (a) unpaid minimum wages as listed above, and (b) liquidated damages.

### COUNT III – BREACH OF CONTRACT – UNPAID WAGES (BASE SALARY) AGAINST DEFENDANTS GERIATRX CARE, INC. and WALTER GIL, M.D., INDIVIDUALLY

81.     Plaintiff SULLIVAN realleges and incorporates the allegations in paragraphs 1 through 48 above as if fully set forth herein.

82.     On or about August 10, 2020, SULLIVAN began working for GERIATRX CARE, INC. and WALTER GIL, M.D. SULLIVAN was not paid for the month of August 2020, and the parties agreed beginning September 1, 2020 for two weeks SULLIVAN would be paid $1,500.00 and then $2,000.00 for the next two weeks of September for doing rounds at the hospital. At the time, Dr. Gil indicated that the bi-weekly salary for doing rounds at hospitals would be increased starting October 1, 2020. Separately, under a different company, SULLIVAN would be paid on a per patient basis at a rate of $30.00 to see patients for Dr. Gil at skilled nursing facilities.

83.     SULLIVAN performed the services requested and required of her, but DEFENDANTS failed to pay her for a single day of doing rounds in hospitals for the time period of August 10, 2020 through November 10, 2020 and November 30, 2020 through December 23, 2020. Additionally, GERIATRX CARE, LLC and WALTER GIL, M.D. failed to pay SULLIVAN one thousand three hundred and eighty dollars ($1,380.00) separately for any patients she saw in skilled nursing facilities between November 30, 2020 and December 23, 2020.

84.     Under a separate agreement between the parties, beginning November 12, 2020 SULLIVAN was to be paid an additional thirty dollars ($30.00) per patient that she saw at the hospital. While Dr. Gil paid SULLIVAN on a per patient basis during the period of November 12,

2020 through November 29, 2020, SULLIVAN was not paid on a per patient basis at the hospital from November 30, 2020 through December 23, 2020.

85.     During Plaintiff SULLIVAN's employment with DEFENDANTS and at all times relevant to this action, Plaintiff SULLIVAN worked and was not compensated for nineteen (19) weeks plus 2 days totaling fifteen thousand five hundred ninety-one dollars and forty cents ($15,591.40) in unpaid wages for SULLIVAN's hospital rounds. Adding the nonpayment of one thousand three hundred and eighty dollars ($1,380.00) as set forth above, total amount of unpaid wages is sixteen thousand nine hundred and seventy-one dollars and forty cents ($16,971.40) plus remuneration at thirty dollars ($30.00) per patient that SULLIVAN saw at the hospital between December 1, 2020 and December 23, 2020 .

86.     GERIATRX CARE, LLC and WALTER GIL, M.D.  have failed to pay a balance of sixteen thousand nine hundred and seventy-one dollars and forty cents ($16,971.40) plus remuneration at thirty dollars ($30.00) per patient that SULLIVAN saw at the hospital between November 30, 2020 and December 23, 2020 to SULLIVAN as established by of an agreed oral agreement, as well as text confirmation of a second agreement between Dr. Gil and SULLIVAN.

87.     GERIATRX CARE, LLC and WALTER GIL, M.D.  thus breached the oral contract(s) by failing to pay SULLIVAN her promised and due wages for services performed.

88.     As a direct and proximate result of GERIATRX CARE, LLC's and WALTER GIL, M.D.'s  breach of contract, SULLIVAN has suffered damages in the amount of wages that were not paid to her.

89.     As this is an action for unpaid wages, SULLIVAN is entitled to recover her costs and attorney's fees pursuant to §448.08, Fla. Stat.

WHEREFORE, Plaintiff, JAMIE SULLIVAN, demands judgment against GERIATRX CARE, INC. and WALTER GIL, M.D., jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

### COUNT IV – BREACH OF CONTRACT – UNPAID WAGES (PER PATIENT PAYMENTS) AGAINST DEFENDANTS GERIATRX HEALTH, LLC and WALTER GIL, M.D., INDIVIDUALLY

90.     Plaintiff SULLIVAN realleges and incorporates the allegations in paragraphs 1, 4 through 13, and 17 through 54 above as if fully set forth herein.

91.     On or about August 10, 2020, SULLIVAN began working for GERIATRX HEALTH, LLC and WALTER GIL, M.D. After being not paid for the month of August 2020, the parties agreed beginning September 1, 2020 for two weeks SULLIVAN would be paid $1,500.00 and then $2,000.00 for the next two weeks for doing rounds and seeing patients at the hospital. At the time, Dr. Gil indicated that the bi-weekly salary for doing rounds and seeing patients at hospitals would be increased starting October 1, 2020. Separately, under a different company, SULLIVAN would be paid on a per patient basis at a rate of $30.00 to see patients for Dr. Gil at skilled nursing facilities.

92.     GERIATRX HEALTH, LLC and WALTER GIL, M.D. maintained and controlled a list of all patients in various skilled nursing facilities and directed SULLIVAN to see those patients and do rounds.

93.     Notwithstanding the fact that GERIATRX HEALTH, LLC and WALTER GIL, M.D. maintained and controlled a list of all patients in various skilled nursing facilities and directed SULLIVAN to see those patients and do rounds, and SULLIVAN saw those patients during the month of December 2020, GERIATRX HEALTH, LLC. and WALTER GIL, M.D. failed to pay SULLIVAN as required under the agreement.

94.     Under the agreement between the parties, SULLIVAN is owed one thousand three hundred and eighty dollars ($1,380.00) for seeing forty-six (46) patients at the skilled nursing facilities at a rate of thirty dollars ($30.00) per patient seen between November 30, 2020 and December 23, 2020.

95.     Beginning on November 12, 2020, under a revised agreement between Dr. Gil and SULLIVAN, SULLIVAN was entitled to be paid on a patient basis at thirty dollars ($30.00) for patients she also saw at the hospital. While Dr. Gil paid SULLIVAN for the patients seen at the hospital between November 12, 2020 and November 29, 2020, Dr. Gil failed to pay SULLIVAN for the patients she saw at the hospital from November 30, 2020 through December 23, 2020.

96.     SULLIVAN  performed the services requested and required of her, but she has not been paid the agreed upon per patient remuneration at both the hospital and skilled nursing facilities between November 30, 2020 and December 23, 2020.

97.     SULLIVAN is owed, and GERIATRX HEALTH, LLC and WALTER GIL, M.D. has failed to pay one thousand three hundred and eighty dollars ($1,380.00) for seeing 46 patients at the skilled nursing facilities at a rate of $30.00 per patient seen between November 30, 2020 and December 23, 2020 and for all patients that SULLIVAN saw at the hospital for the same time period.

98.     GERIATRX HEALTH, LLC and WALTER GIL, M.D. thus breached the agreement by failing to pay SULLIVAN her promised and due wages for services performed.

99.     As a direct and proximate result of the breach of contract between SULLIVAN and GERIATRX HEALTH, LLC and WALTER GIL, M.D., SULLIVAN has suffered damages in the amount of wages that were not paid to her.

100.    As this is an action for unpaid wages, SULLIVAN is entitled to recover her costs and attorney's fees pursuant to §448.08, Fla. Stat.

WHEREFORE Plaintiff, JAMIE SULLIVAN, demands judgment against GERIATRX HEALTH, LLC and WALTER GIL, M.D. jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

## COUNT V – TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AGAINST ALL DEFENDANTS

101.    Plaintiff SULLIVAN realleges and incorporates the allegations in paragraphs 1, 4 through 13, and 17 through 54 above as if fully set forth herein.

102.    Following her resignation from employment with DEFENDANTS, SULLIVAN began to seek out other employment. SULLIVAN was contacted by a representative from MedLead Careers who scheduled an interview with Med Elite Group, for whom SULLIVAN would technically be working for. Med Elite Group places its employees with medical facilities.

103.    SULLIVAN then had an interview with administrative staff via zoom at Martin Nursing and Restorative Care Center. The facility was well aware of SULLIVAN's abilities, as she had been to that facility to see patients who were under the care of Dr. Gil.

104.    SULLIVAN was offered the position which was forty (40) hours per week, Monday through Friday, at a salary of $130,000.00. The position included payment of her malpractice insurance, four weeks paid vacation, and a $20.00 payment for every patient she saw over the required amount of 25 per day.

105.    The facility contacted Dr. Gil regarding SULLIVAN. Dr. Gil inexplicably and falsely told the facility that SULLIVAN had a non-compete with  GERIATRX HEALTH, LLC and WALTER GIL, M.D. and that SULLIVAN could not be employed at Martin Nursing and Restorative Care Center.

106.   SULLIVAN was subsequently contacted by the recruiter she spoke with from MedLead Careers and told that she would not be getting the job because of the existence of the non-compete which Dr. Gil falsely claimed to exist.

107.   An offer for SULLIVAN to work at Martin Nursing and Restorative Care Center with specific terms including forty (40) hours per week, Monday through Friday, at a salary of $130,000.00, payment of SULLIVAN's malpractice insurance, four weeks paid vacation, and a $20.00 payment for every patient she saw over the required amount of 25 per day was accepted by SULLIVAN.

108.   GERIATRX HEALTH, LLC and WALTER GIL, M.D. specifically knew that SULLIVAN was entering into a business relationship with Martin Nursing and Restorative Care Center, because Dr. Gil was contacted by the facility regarding SULLIVAN.

109.   GERIATRX HEALTH, LLC and WALTER GIL, M.D. intentionally and unjustifiably interfered with SULLIVAN starting the position when Dr. Gil falsely advised  Martin Nursing and Restorative Care Center that SULLIVAN was under a non-compete agreement with his company. No such non-compete agreement existed, nor was ever discussed between SULLIVAN and GERIATRX HEALTH, LLC, GERIATRX CARE, INC., and/or WALTER GIL, M.D.

110.   As a direct and proximate result of Dr. Gil's false, intentional, and unjustifiable statement to Martin Nursing and Restorative Care Center, SULLIVAN was not hired by Martin Nursing and Restorative Care Center.

WHEREFORE, Plaintiff JAMIE SULLIVAN, demands judgment against GERIATRX HEALTH, LLC, GERIATRX CARE, INC. and WALTER GIL, M.D. jointly and severally, for intentionally interfering with SULLIVAN's prospective business relationships, and further grant

temporary and permanent injunctive relief against the violating conduct, monetary damages, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

### COUNT VI – QUANTUM MERUIT AGAINST ALL DEFENDANTS

111.   Plaintiff SULLIVAN realleges and incorporates the allegations in paragraphs 1 through 54 above as if fully set forth herein.

112.   In providing services to GERIATRX HEALTH, LLC, GERIATRX CARE, INC. and WALTER GIL, M.D., SULLIVAN acted under an express or implied, oral or written, agreement or request from GERIATRX HEALTH, LLC and WALTER GIL, M.D., GERIATRX CARE, INC.  for the work she performed.

113.   While GERIATRX HEALTH, LLC, GERIATRX CARE, INC., and WALTER GIL, M.D. classified SULLIVAN as an "independent contractor," GERIATRX HEALTH LLC, GERIATRX CARE, INC.,  and WALTER GIL, M.D. controlled the patients SULLIVAN attended to, the places where SULLIVAN attended to those patients, the dates of visits, and compensation, during the time SULLIVAN was employed at GERIATRX HEALTH LLC and GERIATRX CARE, INC.  from August 10, 2020 through December 23, 2020.

114.   As an "independent contractor" SULLIVAN provided a benefit to GERIATRX HEALTH, LLC, GERIATRX CARE, INC.,  and WALTER GIL, M.D. by performing work as an employee under the law and within the agreed upon terms of employment as fully controlled and scheduled by GERIATRX HEALTH, LLC,  GERIATRX CARE, INC., and WALTER GIL, M.D.

115.   Despite providing the services set forth in the agreement between the parties, GERIATRX HEALTH, LLC, GERIATRX CARE, INC.,  and WALTER GIL, M.D. failed to pay SULLIVAN any amount for the services she provided at skilled nursing facilities and hospitals between November 30, 2020 and when she was terminated on December 23, 2020.

116.     Despite providing the services set forth in the agreement between the parties, GERIATRX HEALTH, LLC., GERIATRX CARE, INC., and WALTER GIL, M.D. failed to pay SULLIVAN for all of the hospital rounds she performed between September 1, 2020 and November 12, 2020.

117.     Although SULLIVAN was actually an employee, GERIATRX HEALTH, LLC., GERIATRX CARE, INC., and WALTER GIL, M.D. failed to pay for that benefit by misclassifying SULLIVAN as an independent contractor and avoided any obligation to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits.

118.     GERIATRX HEALTH, LLC., GERIATRX CARE, INC., and WALTER GIL, M.D.'s conduct, as set forth above, in misclassifying SULLIVAN as an independent contractor, renders it liable under the common law doctrine of quantum meruit.

119.     Since SULLIVAN was not properly paid her earned wages for the period of August 10, 2020 through November 12, 2020 and November 30, 2020 through December 23, 2020, GERIATRX HEALTH, LLC., GERIATRX CARE, INC., and WALTER GIL, M.D.  has failed and/or refused to pay SULLIVAN the reasonable value for the services rendered and accepted.

120.     To meet the ends of justice, this Court should award the reasonable value of services rendered and accepted in an amount to be proved at trial.

WHEREFORE, Plaintiff, JAMIE SULLIVAN, demands judgment against GERIATRX HEALTH, LLC., GERIATRX CARE, INC., and WALTER GIL, M.D., jointly and severally, plus interest, costs, reasonable attorney's fees, and such other remedy this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff, JAMIE SULLIVAN, demands a trial by jury on all issues so triable.

Dated May 10, 2021.

Respectfully submitted,

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
JOSEPH G. SCONZO, ESQUIRE
Florida Bar No.: 0508720
**Primary Email**: greg@sconzolawoffice.com
**Primary Email**: joe@sconzolawoffice.com